IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE SOLIS<br>7999 Eurogrey Court<br>Blacklick, Ohio 43004 | )<br>)<br>)<br>) | Judge: |
| Plaintiff, | )<br>) | |
| vs. | )<br>)<br>) | |
| THE OHIO STATE UNIVERSITY<br>WEXNER MEDICAL CENTER<br>c/o Ohio Attorney General Dave Yost<br>30 East Broad Street, 14th Floor<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>**(Race Discrimination)**<br><br>**<u>Jury Demand</u>**<br>**<u>Endorsed Hereon</u>** |
| Defendant. | ) | |

## THE PARTIES

1. Plaintiff, Stephanie Solis ("Plaintiff"), is a citizen of the State of Ohio and resides in Blacklick, Ohio, in the County of Franklin.

2. Defendant, The Ohio State University Wexner Medical Center (the "Medical Center" or the "Defendant"), is an entity of the State of Ohio which employs doctors, nurses, and other personnel to evaluate, care for and treat patients at its hospitals, clinics and outpatient facilities. The Medical Center provides medical training and education to matriculating students, and retains doctors, nurses and other medical care personnel to provide supervision and instruction to students, interns, residents, and others.

3. The Medical Center and the State of Ohio employ doctors, nurses, and other personnel to evaluate, care for and treat patients at hospitals, clinics and

outpatient facilities. The Medical Center acted through its agents and employees who were within the course and scope of their employment.

4. At all relevant times, the Plaintiff was employed by the Medical Center and the Medical Center is an employer as defined in Title VII of the Civil Rights Act of 1964, as amended and codified in 42 U.S.C. Section 2000e(b), et seq.

5. This Court has subject matter jurisdiction over this matter pursuant to its federal claims jurisdiction. The federal claims are made pursuant to Title VII of the Civil Rights Act of 1964, as amended.

6. This Court has personal jurisdiction, and venue is proper in this Court because the events pertinent to this lawsuit occurred in the Southern District of Ohio, Eastern Division.

**Factual Background**

7. Plaintiff is an African-American female.

8. Plaintiff received an Associate Degree in Nursing from Ohio University in 2007, a Bachelor of Science in Nursing from Ohio University in 2012 and a Master of Science in Nursing, Family Nurse Practitioner, from Chamberlin College of Nursing in 2016.

9. Plaintiff has worked as a Staff Nurse for the Defendant since 2011.

10. Since February of 2012, Plaintiff has worked as a Staff Nurse on the Fifth Floor in the Defendant's Vascular and Cardiothoracic Surgery Unit at Ross Heart Hospital.

11. In 2018 the Plaintiff became licensed by the Ohio Board of Nursing to practice as an Advanced Practice Registered Nurse, which is also referred to as a Certified Nurse Practitioner/Advanced Practice Provider ("APP"). The Plaintiff's APP certification is in Family Medical Care, which is often referred to as an FNP, or Family Nurse Practitioner.

12. Plaintiff has nearly a dozen years of acute care experience working with Cardiothoracic and Vascular Surgery patients.

### Promotion of White Family Nurse Practitioners

13. In June of 2021, the Plaintiff asked an Advanced Practice Provider Manager at the Medical Center, Brea McLaughlin, who is white, if the University would consider Family Nurse Practitioners for a Vascular Physician Assistant position, which is considered to be an Acute Care APP position, not a Family APP position. McLaughlin informed the Plaintiff that the Medical Center has historically allowed for Family Nurse Practitioners to take Acute Care APP positions if the candidate agrees to go back for his or her Acute Care Nurse Practitioner license. A copy of this correspondence between the Plaintiff and McLaughlin is attached hereto as Exhibit 1.

14. McLaughlin, like the Plaintiff, is a certified Family Nurse Practitioner, and does not have an Acute Care APP Certification. Despite not having an Acute Care Certification however, McLaughlin was promoted to an APP Manager position in the Medical Center's Department of Cardiac and Vascular Surgery. This position

prefers Acute Care Certification, but McLaughlin received the promotion despite the fact that she was lacking it.

15. McLaughlin is just one example of the Medical Center promoting a white FNP to a position which preferred Acute Care APP Certification. There are numerous other APPs without Acute Care Certification who have been promoted by the Medical Center in the past 4 years to positions which indicate a preference for Acute Care Certification. Among the APPs promoted to positions which express a preference for Acute Care Certification but who lack that Certification are Christine Stallings, Megan Stevenson, Mackenzie Overmeyer, Daniel Wade and Randall Kent, all of whom are white.

16. Stallings, Stevenson, Overmeyer, and Kent all held the same APP Certification in Family Medicine which the Plaintiff holds at the time they were promoted to a position which indicated a preference for Acute Care Certification. Wade held an APP Certification in Adult Medicine when he received his promotion.

17. The Plaintiff has expressed to the Medical Center on numerous occasions that she is willing to go back to school to get her APP Acute Care Certification if she is promoted to an APP position which indicates a preference for that certification. This sentiment has been communicated to both Brea McLaughlin, Ajwad Farrah and Aaron Begue.

18. In every annual performance evaluation the Plaintiff has had since she became certified as an FNP five years ago, she has informed each of her managers that she was interested in obtaining a post-graduate Acute Care APP Certification.

During these evaluations, however, the Plaintiff also stated that she did not want to return to school to obtain another APP certification until she was able to get a promotion and, therefore, make use of the FNP certification she had already received.

## Failures to Promote Plaintiff

### APP in Vascular Surgery/JRN R46367

19. In late May of 2022, the Plaintiff applied for a position as an Advanced Practice Provider in Vascular Surgery with the Medical Center, JRN R46367. This position would have been a promotion for the Plaintiff.

20. The Plaintiff was qualified for JRN R46367.

21. The Plaintiff was not even asked to interview for JRN R46367. Sarah Shockling, who is Caucasian, was awarded this position.

22. Shockling was less qualified than the Plaintiff for this position as she had no prior Vascular experience. A copy of Shockling's cover letter, describing her lack of experience in Vascular Surgery, is attached as Exhibit 2. In contrast to Shockling, the Plaintiff had nine years of experience caring for Vascular Surgery patients.

23. Shockling had only worked in the medical field since March of 2020 and, therefore, had only two years and two months of experience at the time she was offered the position. Shockling, moreover, had no prior nursing or healthcare experience at the time she applied for JRN 463367 and had received her certification as an APP two years after the Plaintiff had been certified as a Nurse Practitioner.

5

24. The Plaintiff had more than ten (10) years of medical experience at the time she applied for JRN 463367.

### APP in Ross Heart/JRN R26560

25. In September of 2021, the Plaintiff applied for a position as an Advanced Practice Provider with the Ross Heart Hospital, JRN R26560. At the time there were two openings for this position, both of which would have been a promotion for the Plaintiff.

26. The Plaintiff was qualified for JRN R26560.

27. Daniel Wade, who is Caucasian, was awarded one of these positions.

28. Wade was less qualified than the Plaintiff as he had seven less years of nursing experience at the time he applied for JRN 265560.

29. Wade, like the Plaintiff, was not an Acute Care APP.

30. Any claim that Wade was more qualified than the Plaintiff due to LVAD training which Wade had received is disingenuous, as the large majority of APPs hired at the Ross receive their LVAD training while they are on the job. Therefore, a lack of prior LVAD training does not mean that the Plaintiff was less fit than Daniel Wade with respect to the qualifications required for JRN 265560.

### Dozens of other efforts at promotions

31. The Plaintiff has applied for dozens of other promotions during the decade-plus she has been employed at the Medical Center. Despite being qualified for each and every position to which she has applied, the Plaintiff has not been

6

promoted during the nearly twelve years she has been employed by the Medical Center.

### EEOC/Ohio Civil Rights Commission Process

32. On September 13, 2022, the Plaintiff submitted charges to the Ohio Civil Rights Commission, asserting that the Medical Center's failure to promote her to the positions delineated above was employment discrimination. Plaintiff's charges, styled as Ohio Civil Rights Commission Charge No. COLE1(50192) 09132022, were dual-filed with the Equal Employment Opportunity Commission as EEOC Charge No. 22A-2023-00050.

33. In March of 2023, the Plaintiff requested that Charge No. COLE1(50192) be withdrawn. A withdrawal was issued on April 6, 2023.

### Damages

34. The Plaintiff's annual salary as a staff nurse, without including overtime-related pay, with the Medical Center in 2021 and 2022 was $82,464.58 and $86,023.04, respectively.

35. The Plaintiff's earnings as an Advanced Practice Provider in the positions awarded to Sarah Shocking and Daniel Wade would have been higher on an hourly basis than her earnings as a staff nurse for the Defendant.

### First Cause of Action
### (Race Discrimination in violation of Title VII)

36. Plaintiff incorporates Paragraphs 1 through 35 above by reference as if fully rewritten herein.

37. Plaintiff is African-American and a member of a protected class under Title VII.

38. The Medical Center was aware of the Plaintiff's race.

39. Declining to interview and offer either of the promotions described in paragraphs 19 through 30 of this Complaint to the Plaintiff are adverse actions against the Plaintiff.

40. The Medical Center discriminated against Plaintiff on the basis of her race with respect to the terms, conditions, and privileges of her employment by offering promotions to less-qualified white employees instead of to the Plaintiff.

41. The Medical Center lacks and continues to lack any legitimate business reason for its adverse actions of failing to promote the Plaintiff, and any other stated explanation for its conduct is a mere pretext for discrimination.

42. The Medical Center's conduct in connection with the failure to promote the Plaintiff constitutes an unlawful employment practice on the basis of race in violation of Title VII.

43. As a direct and proximate cause of the Medical Center's actions, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgment as a matter of law.

44. The Plaintiff seeks all compensatory and exemplary damages allowed by law.

## Second Cause of Action
### (Race Discrimination in Violation of O.R.C. § 4112.01 *et seq.*)

45. Plaintiff incorporates paragraphs 1 through 44 above as if fully set forth herein.

46. Plaintiff is African-American and a member of a protected class under Ohio Revised Code § 4112.01 *et seq.*).

47. The Medical Center was aware of the Plaintiff's race.

48. Declining to interview and offer either of the promotions described in paragraphs 19 through 30 of this Complaint to the Plaintiff are adverse actions against the Plaintiff.

49. The Medical Center discriminated against Plaintiff on the basis of her race with respect to the terms, conditions, and privileges of her employment by offering promotions to less-qualified white employees instead of to the Plaintiff.

50. The Medical Center lacks and continues to lack any legitimate business reason for its adverse actions of failing to promote the Plaintiff, and any other stated explanation for its conduct is a mere pretext for discrimination.

51. The Medical Center's conduct in connection with the failure to promote the Plaintiff constitutes an unlawful employment practice on the basis of race in violation of Ohio Revised Code § 4112.01, *et seq*.

52. As a direct and proximate cause of the Medical Center's actions, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgment as a matter of law.

53. The Plaintiff seeks all compensatory and exemplary damages allowed by law.

## Conclusion

WHEREFORE, the Plaintiff suffered damages proximately caused by the acts of the Medical Center in violation of her rights under Title VII of the Civil Rights Act of 1964 and demands:

A. Compensatory damages in an amount in excess of $50,000, including back pay, front pay, consequential damages, and incidental damages;

B. Exemplary damages, punitive damages, attorney's fees, court costs and interest;

C. Promotion to an Advanced Practice Provider at the Medical Center; and/or

D. All other relief determined by the Court to be appropriate, just and equitable.

Respectfully submitted,

**COHEN ROSENTHAL & KRAMER LLP**

/s/ Ellen M. Kramer
Jason R. Bristol (0072989)
Ellen M. Kramer (0055552)
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
(216) 815-9500 (Telephone)
(216) 781-8061 (Facsimile)
jbristol@crklaw.com
emk@crklaw.com

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, Stephanie Solis, hereby demands a trial by jury on all issues so triable with the maximum number of jurors permitted by law.

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)
